**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| RADHA GEISMANN, MD, P.C., individually and on behalf of all other similarly-situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 4-14-CV-001538 RLW |
| v. | ) ) | |
| AMERICAN HOMEPATIENT, INC., | ) ) | JURY TRIAL DEMANDED |
| and | ) ) | |
| JOHN DOES 1-10, | ) ) | |
| Defendants. | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
THE COMPLAINT OR, IN THE ALTERNATIVE, DISMISS OR STRIKE
THE CLASS ALLEGATIONS FROM THE COMPLAINT**

Defendant American Homepatient, Inc. ("American") hereby submits its Memorandum in Support of Motion to Dismiss the Complaint or, in the Alternative, Dismiss or Strike the Class Allegations, as follows:

## I. INTRODUCTION

1.      On **August 4, 2014**, Plaintiff Radha Geismann, MD, P.C. ("Plaintiff") filed a Class Action Petition (the "Complaint" or "Compl.") against American in the Circuit Court of St. Louis County, Missouri styled *Radha Geismann, MD, P.C., individually and on behalf of all others similarly-situated v. American Homepatient, Inc. and John Does 1-10*, Case No. 14SL-CC02607.

2.      In its Complaint, Plaintiff alleges and asserts (i) claims for common law conversion by allegedly faxing a single-page "advertisement" to Plaintiff (the "Fax"), as well as the putative class members, without the recipients' permission; (ii) claims for violations of the Missouri Consumer Fraud and Deceptive Business Practices Act ("MPA"), Mo. Rev. Stat. Chapter 407,

based upon the same alleged conduct; and (iii) that American violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, based upon the same alleged conduct. (Compl. ¶¶ 1-5).

3.      For the following reasons, Plaintiff's Complaint against American is deficient as a matter of law, and the Court should dismiss the Complaint in it entirety:

(a)      Plaintiff's MPA claim is barred, as a matter of law, because (i) American's alleged transmission of the allegedly unsolicited Fax does not constitute an unlawful practice under the MPA, and (ii) Plaintiff lacks standing to sue under the MPA.

(b)      Plaintiff's vague and inadequate conversion claim fails to satisfy pleading standards set forth in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).

(c)      The Complaint fails to state a claim because the Fax at issue is not an "advertisement" as defined and regulated by the TCPA, and, thus, as a matter of law, Plaintiff cannot establish an essential element of its claim.

(d)      Even assuming Plaintiff can establish all of the essential elements of its TCPA claim (which it cannot), Plaintiff's class allegations fail, as a matter of law, because Plaintiff has not pled a plausible claim for class relief. To the contrary, even a cursory review of the Complaint establishes that Plaintiff cannot satisfy the prerequisites to certify a class action, that is, the commonality, typicality, predominance, and ascertainability requirements of FED. R. CIV. P. 23. At a minimum, the determination of both class membership and liability under the TCPA will require individualized inquiries into, *inter alia*, the circumstances surrounding the transmission of faxes, the ownership of the facsimile machines, the existence (or absence) of evidence of consent to receive the faxes, and the existing business relationship (or lack thereof) between each potential class member and American, which precludes class treatment of Plaintiff's TCPA claims.

## II.  ARGUMENT & AUTHORITIES

**A.  *Plaintiff's MPA Claim Is Barred, As a Matter of Law, Because (i) American's Alleged Transmission of the Allegedly Unsolicited Fax Does Not Constitute An Unlawful Practice Under the MPA, and (ii) Plaintiff Lacks Standing To Sue Under the MPA.***

4.      As stated herein, *supra*, in its Complaint, Plaintiff alleges and asserts that American violated the MPA by allegedly faxing a single-page "advertisement" to Plaintiff, as well as the putative class members, without the recipients' permission. (Compl. ¶¶ 1-5). Specifically, in Paragraph 4 of its Complaint, Plaintiff asserts the following:

> On behalf of itself and all others similarly situated, Plaintiff brings this case as a class action asserting claims against Defendants under the TCPA, the common law of conversion and **Missouri consumer and fraud and deceptive business practices act Chapter 407**.

5.      The MPA provides, in pertinent part:

> 407.020. 1. The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.453, in or from the state of Missouri, is declared to be an unlawful practice. The use by any person, in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.453, in or from the state of Missouri of the fact that the attorney general has approved any filing required by this chapter as the approval, sanction or endorsement of any activity, project or action of such person, is declared to be an unlawful practice. Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement or solicitation. . . .

6.      As a matter of law, American's alleged transmission of the allegedly unsolicited Fax does not constitute an unlawful practice under the MPA. *Missouri ex rel. Nixon v. Progressive Bus. Pub., Inc.*, 504 F.Supp.2d 699, 707 (W.D. Mo. 2007) ("[P]laintiff's attempt to couch its TCPA claims within the MPA is improper, as the activities targeted by plaintiff are

not the sort of actions that are tainted by conventional unfair practices or consumer fraud. Thus, these actions are not covered by the MPA. Plaintiff's claims, as pled in its petition, should be dismissed for failure to state a claim upon which relief can be granted. Therefore, for this additional reason, defendant's motion to dismiss, or in the alternative, motion for summary judgment (Doc. No. 13), is GRANTED."); *Missouri ex rel. Nixon v. Am. Blast Fax, Inc.*, 196 F.Supp.2d 920, 934 (E.D. Mo. 2002) (finding that even if defendant's conduct in sending unsolicited fax advertisements violated the TCPA, defendant's conduct did not violate the MPA), *rev'd on other grounds* at 323 F.3d 649 (8th Cir. 2003).

7.      Moreover, Plaintiff lacks standing to sue under the MPA. As explained, *supra*, "Section 407.025.1 creates a private right of action under the MPA in favor of '[a]ny person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020.'" *Chochorowski v. Home Depot USA., Inc.,* 295 S.W.3d 194, 197-98 (Mo. App. E.D. 2009) (underlining added). First, Plaintiff is a business, not a person. Second, indisputably, allegations arising under the MPA must meet the same pleading standards regarding specificity as common law fraud claims. *See Mattingly v. Medtronic, Inc.,* 466 F.Supp.2d 1170, 1173-74 (E.D. Mo. 2006); *Baryo v. Philip Morris USA, Inc.,* 435 F.Supp.2d 961, 968 (W.D. Mo. 2006). The plain text of the MPA requires that in order to state a claim for violation of the MPA, Plaintiff must allege, *inter alia,* that it (i) **purchased or leased merchandise** from American, and (ii) such purchase or lease was **primarily for personal, family, or household purposes**. However, Plaintiff's Complaint only very generally, vaguely, and inadequately alleges a violation of the MPA, and Plaintiff entirely fails to allege that it purchased or leased any merchandise from American or that such merchandise, if any, was purchased "primarily for personal, family, or

household purposes." *See Saev v. CompUSA, Inc.,* 174 F.R.D. 448, 450 (E.D. Mo. 1997) (plaintiff who purchased computer for business purposes lacked standing to allege MPA claim). Therefore, Plaintiff's MPA claim, to the extent it is not barred under *Missouri ex rel. Nixon*, is insufficient as a matter of law and should be dismissed.

**B.**   **Plaintiff's Vague And Inadequate Conversion Claim Fails To Satisfy The Pleading Standards Set Forth In Bell Atlantic Corp. v. Twombly and Ashcroft v. Iqbal.**

8.       As also stated herein, *supra*, in its Complaint, Plaintiff alleges and asserts that American committed conversion by allegedly faxing a single-page "advertisement" to Plaintiff, as well as the putative class members, without the recipients' permission. (Compl. ¶¶ 1-5).

9.       As with its MPA claim, Plaintiff's Complaint only very generally alleges a claim for conversion. Plaintiff's vague and inadequate "conversion" claim should also be dismissed because it fails to satisfy the pleading standards set forth in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). The U.S. Supreme Court has held that a plaintiff is required to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. That holding was expounded upon in *Iqbal:*

> Two working principles underlie our decision in *Twombly*.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.,* at 555, 127 S.Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.

*Iqbal,* 556 U.S. at 678-79. Here, the "conversion" allegation is so ambiguously pled and conclusory that it fails to adequately place American on notice of a claim, much less meet the standards set forth in *Twombly* and *Iqbal*. Accordingly, Plaintiff's vague and inadequate "conversion" claim is insufficient as a matter of law and should be dismissed.

## C. *The Complaint Fails To State A Claim Because The Faxed Letter At Issue Is Not An "Advertisement" As Defined And Regulated By The TCPA.*

10.     As further stated herein, *supra*, in its Complaint, Plaintiff alleges that American violated the TCPA by allegedly faxing a single-page "advertisement" to Plaintiff, as well as the putative class members, without the recipients' permission. (Compl. ¶¶ 1-5).

11.     The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(C), of 1991, as amended by the Junk Fax Protection Act of 2005, makes it unlawful "to use any telephone facsimile machine, computer, or other device to send to a telephone facsimile machine, an unsolicited **advertisement**," unless additional requirements are met. One critical determination regarding the application of the law focuses on the word "advertisement." The TCPA defines "advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services." 47 U.S.C. § 227(a)(5).

12.     Plaintiff is a Missouri corporation that alleges it received one (1) facsimile from American on June 22, 2013. (Compl. ¶ 10). While the Complaint's allegations regarding the content of the fax are quite scant, the fax itself is attached to the Complaint and incorporated therein by reference. (Compl. ¶ 10). The fax is in a single-page, letter format, and *informs* Plaintiff as follows:

> Your Medicare Patients have 1 week to find a new provider. American Homepatient was chosen to be a contracted provider with Medicare for respiratory products and services in your area for: Oxygen Therapy [and] CPAP and Sleep Supplies[.] Per the Competitive Bidding Program Medicare beneficiaries need contracted Medicare providers for these services beginning July 1st.

American Homepatient was chosen as a qualified provider based on our Medicare experience, financial stability, readiness to service patients, and broad product selection.

13. "[M]essages that do not promote a commercial product or service . . . are not unsolicited advertisements under the TCPA." *Phillips Randolph Enters., LLC v. Adler-Weiner Research Chicago, Inc.*, 526 F. Supp. 2d 851 (N.D. Ill. 2007). The District Court's decision in *Phillips Randolph* is instructive. In that case, the court dismissed the plaintiff's TCPA claim after holding that the fax at issue was not an "advertisement" under the TCPA.

14. Like the present Action, the court in *Phillips Randolph* noted that the fax was <u>not</u> an indiscriminate invitation to the public at large. *Id.* at 853. Here, nothing in the fax is directed to patients or consumers of any good or service; rather, the recipient was carefully selected, and the fax was sent to a specific, qualified healthcare professional to educate that physician of a specific governmental development in the healthcare industry, specifically, regarding qualified Medicare providers in Plaintiff's area. Interestingly, Plaintiff's Complaint makes no allegation that any of the fax was addressed to consumers, retailers, or any intermediary purchasers.

15. Moreover, although the fax in this Case identifies American as a qualified Medicare provider in Plaintiff's area, and despite the fact that roughly one-sixth of the fax contains information regarding products and services offered by American, such information does not convert the otherwise <u>informational</u> message into an advertisement. *See N.B. Indus. v. Wells Fargo & Co.,* No. C 10-03203 LB 2010 WL 4939970 (N.D. Cal. Nov. 30, 2010). As the court in *N.B. Industries* held, the "'inclusion of [the defendants'] logos and website addresses is incidental information that does not transform the messages into advertisements." *Id.* at *4. That court recognized that the "inquiry is not whether there is an ancillary commercial benefit to either party, but instead is whether the message is an advertisement." *Id.* at *10; *see also Holmes v. Back Doctors, Ltd.,* No. 09-540-GPM 2009 WL 3425961, at *4 (S.D. Ill. Oct. 21,

2009) (finding that fax that included <u>bona fide medical information</u> directed to <u>specific regular recipients</u> did <u>not</u> constitute advertising within the meaning of the TCPA, notwithstanding Court's finding that "one-seventh of the space in each fax is devoted to advertising"); *Cynthia S. Holmes, P.C. v. Back Doctors, Ltd.,* 695 F. Supp. 2d 843, 854 (S.D. Ill. 2010) (focusing on "four corners of the faxes sent," and noting that "it is not the case that the TCPA was intended to be a blanket prohibition of commercial speech.").

16.     Because the facsimile at issue in this Case does not meet the statutory definition of "advertisement," the TCPA does not apply and the Complaint fails, as a matter of law.  47 U.S.C. § 227(b)(l)(C);  *Ameriguard, Inc., v. Univ. of Kansas Med. Ctr. Research Inst.*, 222 Fed. Appx 530 (8th Cir. 2007) (affirming District Court's dismissal of TCPA claim based on determination that the subject fax was not an advertisement).

**D.  *Plaintiff's Class Allegations Fail, As a Matter of Law, and Should Be Dismissed or Stricken.***

**a.  <u>The Elements of TCPA</u>**

17.     As explained, *supra*, the TCPA makes it unlawful "to use any telephone facsimile machine, computer, or other device to send to a telephone facsimile machine, an **unsolicited** advertisement," unless additional requirements are met. Thus, a critical determination regarding the application of the law focuses on the word "unsolicited." The TCPA defines "unsolicited" as "transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. §227(a)(5). If a fax is transmitted *with* prior express invitation or permission—however given—the TCPA does not apply and liability cannot attach. 47 U.S.C. §227(b)(l)(C) (providing that only "unsolicited" advertisement faxes are unlawful); *see also Missouri ex rel. Nixon v. Am. Blast Fax, Inc.,* 323 F.3d 649, 660 (8th Cir. 2003).

18.     Moreover, even if American's fax meets the TCPA's definition of "unsolicited," which it does not, the statute provides an exception to liability if the sender and

the recipient had an established business relationship (an "EBR"). 47 U.S.C. §227(b)(1)(C). EBR means "a prior or existing relationship fanned by a voluntary two-way communication between a person or entity and a residential [or business] subscriber with or without an exchange of consideration, on the basis of an inquiry, application, purchase or transaction by the residential [or business] subscriber regarding products or services offered by such person or entity, which relationship has not been previously terminated by either party." *See* 47 U.S.C. §227(a)(2).

**b.   The Class Allegations in the Complaint Cannot Support a Class Action Under the TCPA and Should Be Dismissed or Stricken.**

19.   Plaintiff has the burden to establish the case is suitable for class certification under FED. R. CIV. P. 23. *Lindsay Transmission, LLC v. Office Depot, Inc.*, No. 4:12-CV-221 CEJ, 2013 WL 275568 *3 (E.D. Mo. Jan. 24, 2013). It is undisputed that Plaintiff must satisfy the following prerequisites in order to certify a class action:

> **(i)**   Under FED. R. CIV. P. 23(a), Plaintiff must establish (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation;

> **(ii)**   Plaintiff must show that the action is maintainable under FED. R. CIV. P. 23(b)(3), which requires that class issues predominate over individual issues; and

> **(iii)**   Plaintiff must demonstrate that the class it seeks to certify is ascertainable. *See, e.g., Ad Hoc Committee to Save Homer G. Phillips Hosp. v. City of St. Louis,* 143 F.R.D. 216, 219 (E.D. Mo. 1992) ("threshold inquiry in any determination of class certification is identification of the parameters of the proposed class"); *Dumas v. Albers Med., Inc.,* No. 03-0640-CV-W-GAF, 2005 WL 2172030, *5 (W.D. Mo. Sept. 7, 2005) (class, as defined, must be ascertainable).

20.   Here, Plaintiff's class allegations cannot support a class action under the TCPA and should, therefore, be dismissed or stricken. Plaintiff's class allegations fail to satisfy Rules 23(a) and 23(b)(3), because individual issues predominate with respect to establishing consent of the potential class members and the EBR (or the lack thereof) between each potential class member and Defendant. *Sample v. Monsanto Co.*, 218 F.R.D. 644, 650 (E.D. Mo. 2003), *aff'd sub nom,*

*Blades v. Monsanto Co.,* 400 F.3d 562 (8th Cir. 2005). The following demonstrates that the class allegations do not plausibly allege commonality, typicality, predominance, or ascertainability:

> **i.  The  Class,  as Alleged, Fails To Satisfy the Commonality and Typicality Requirements Under Rule 23(a)(2) and Rule 23(a)(3).**

21.      Plaintiff's class allegations are insufficient under FED. R. CIV. P. 23(a) because they fail to plausibly demonstrate commonality and typicality and, therefore, should be stricken or dismissed.

22.      The basic theory of any class action is that, in the course of proving its claim, the class representative also will prove the class claim. To that end, Rule 23(a) requires that there be common issues of law or fact and that the claims of the named plaintiff be typical of the class claims. The Complaint alone demonstrates that Plaintiff is unable to satisfy the commonality requirement as a matter of law.

23.      To satisfy commonality, a plaintiff must show that class members "suffered the same injury" and "their claims . . . depend upon a common contention." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011). "That common contention, moreover, must be of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 2551; *see Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 404 (E.D. Pa. 1995) (finding insufficient commonality in putative TCPA class action because "liability arises only if a transmitted advertisement is unsolicited" and that typicality failed because proof of plaintiff's claims would not necessarily prove all the proposed class members' claims); *see also Kenro, Inc. v. Fax Daily, Inc.,* 962 F.Supp. 1162, 1169 (S.D. Ind. 1997) ("[a]s in *Forman,* the definition of Kenro's proposed plaintiff class would require the court to address the central issue of liability"); *Hicks v. Client Servs., Inc.,* No. 07-61822-CIV, 2008 WL 5479111 (S.D. Fla. Dec. 11, 2008)

(without reference to any class-discovery facts, holding that commonality failed noting that plaintiff failed to describe how she could show the lack of express consent by herself and the class members "without the trial degenerating into mini-trials on consent of every class member").

24.     It is axiomatic that not every common question will suffice, since "at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998). Instead, what is required to meet the commonality requirement "is a common issue the resolution of which will advance the litigation." *Id.*; *see also Smith v. Brown & Williamson Tobacco Corp.*, 174 F.R.D. 90, 94 (W.D. Mo. 1997) (denying certification where "issues are only common in a general sense: resolution of these issues will have little to no legal or practical significance for this case").

25.     Plaintiff also alleges, in conclusory fashion, that common questions of fact and law apply to all class members. The individualized factual inquiries required by Plaintiff's class allegations, and the resulting individualized determinations of law, fatally undermine Plaintiff's class allegations, including, for example, the following claims purportedly common to the class:

> (1)     the manner and method that American used to compile or obtain the list of recipients' fax numbers;

> (2)     whether American sent faxes without the recipient's prior permission or invitation; and

> (3)     whether American acted knowingly. (*See* Compl.¶¶ 35(b)(iv),(v) and (viii)).

26.     Not surprisingly, Plaintiff's Complaint makes absolutely no attempt to show how these three purportedly common issues can be determined on a class-wide basis. Plaintiff has not pleaded: (1) facts or a theory supporting that American obtained fax numbers on a mass basis; (2) facts making it plausible that American failed to obtain consent from any putative class member before sending a fax invitation (other than a single conclusory allegation in the

Complaint); or (3) facts or a theory supporting that American acted knowingly toward every putative class member.

27.     "The presence of a common legal theory does not establish typicality when proof of a violation requires individualized inquiry." *Elizabeth M. v. Montenez,* 458 F.3d 779, 787 (8th Cir. 2006), *see also Exhaust Unlimited, Inc. v. Cintas Corp.,* 223 F.R.D. 506, 511 (S.D. Ill. 2004) (a "proposed class member's claim is not typical if proof 'would not necessarily prove all the proposed class member's claims'") (quoting *Ruiz v. Stewart Associates, Inc.,* 167 F.R.D. 402, 405 (N.D. Ill. 1996)); *Brooks v. S. Bell Tel. & Tel. Co.,* 133 F.R.D. 54, 58 (S.D. Fla. 1990) ("If proof of the representatives' claims would not necessarily prove all the proposed class members' claims, the representatives' claims are not typical of proposed members' claims.").

28.     Not only is Plaintiff's Complaint notably silent on facts that would be helpful to its class claim, it ignores the commonality and typicality requirements altogether. For example, Plaintiff did not (and could not in good faith) plead that American conducted a sight-unseen, indiscriminate, fax-blasting campaign. As to consent, Plaintiff has not plead a single fact regarding the aspects of putative conduct that would establish consent was given or refused. Instead, Plaintiff merely alleges, in conclusory fashion, that "Defendants faxed the same and similar facsimiles to the members of the proposed class in Missouri and throughout the United States without first obtaining the recipients' prior express permission or invitation." Far from demonstrating the claims are typical or common, this allegation illustrates that individual questions as to prior permission, invitation, or both will predominate every potential class member's right to relief. "The factual core of the case is not whether Defendants sent facsimile transmissions, but rather, whether each of the individual class members solicited the facsimiles." *Frickco Inc. v. Novi BRS Enterprises, Inc.,* No. 10-10626, 2011 WL 2079704 *5 (E.D. Mich. May 25, 2011). The District Court in *Forman* also addressed commonality, stating as follows:

---

> Plaintiff's proposed "common" questions are inherently individualized, requiring inquiry into the particular circumstances of each transmission. The transmissions to each plaintiff would necessarily occur in different places, at different times and under differing circumstances. Given the individual proof necessary to establish liability, the commonality requirement cannot be met.

*Forman,* 164 F.R.D. at 404.

29.     Plaintiff's bare allegations cannot support a plausible finding that the class members' claims all arise from the same course of events or that Plaintiff has legal claims typical of the class. On its face, the fax was sent to a highly sophisticated recipient, a physician, who had to make individual decisions whether to receive the information and/or to register for one of the programs. To the extent the Complaint is read to allege that other physicians received faxes, there is nothing in the Complaint to suggest that any or all such physicians came to receive the program invitation in the same fashion or had a uniform state of mind regarding consent to receive the fax invitation. To the contrary, Plaintiff's claim and each putative class member's potential claim arises from an individualized event, which in turn makes it impossible for Plaintiff to establish commonality or typicality.

### ii.   *The Class, as Alleged, Does Not Satisfy the Requirements of Rule 23(b)(3) in that Individual Issues Predominate.*

30.     Even if Plaintiff could meet the commonality and typicality requirements, he could not carry the higher burden created under FED. R. CIV. P. 23(b)(3). Plaintiff's class claims should be stricken because the Complaint lacks factual allegations regarding a generalized theory of proof to satisfy the predominance test and class-wide adjudication under FED. R. CIV. P. 23(b)(3).

31.     "To qualify for certification under Rule 23(b)(3) . . . [c]ommon questions must predominate over any questions affecting only individual members…" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (quoting FED. R. CIV. P. 23(b)(3). The predominance test under Rule 23(b)(3) is even "more stringent" than the commonality requirement. *See Owner-Operator*

*Indep. Drivers Ass'n., Inc. v. New Prime Inc.,* 213 F.R.D. 537, 546 (W.D. Mo. 2002), *aff'd,* 339 F.3d 1001 (8th Cir. 2003) (citing *Amchem,* 521 U.S. at 623-24 (1997)).  As the Eighth Circuit explained:

> The requirement of Rule 23(b)(3) that common questions predominate  over individual questions "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." The nature of the evidence that will suffice to resolve a question determines whether the question is common or individual. **If, to make a prima facie showing on a given question, the members of a proposed  class will need to present evidence that varies from member  to member, then  it is an individual question**. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question.

*Blades v. Monsanto Co.,* 400 F.3d 562, 566 (8th Cir. 2005) (emphasis added) (citations omitted); *Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 778 (8th Cir. 2013). The predominance requirement "necessarily requires an examination of the underlying elements necessary to establish liability for plaintiffs' claims." *Sample*, 218 F.R.D. at 650. Recently holding that a TCPA plaintiff did not meet the predominance requirement, the District Court for the Western District of Missouri stated: "The predominance requirement explicitly requires a comparison between common issues and individual issues in order to ascertain whether the common issues predominate, and thus requires the Court to identify the common issues and the individual issues presented by the case." *Evans & Green, LLP v. That's Great News, LLC*, No. 11-3340-CV-S-ODS, 2012 WL 4888471 *4 (W.D. Mo. Oct. 15, 2012) (citations omitted).

    a.  <u>Plaintiff fails to meet the predominance requirement because an individualized determination is required to as to whether the facsimile was **unsolicited** and whether an **EBR** existed.</u>

    32.    Determining whether a prior EBR existed or whether the facsimile was invited requires evidence that varies for each potential member, making the certification of Plaintiff's class under the TCPA inappropriate. *See Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1029 (8th Cir.

2010) (citations omitted); *see also O'Conner v. Diversified Consultants, Inc.*, No. 11-CV-1722, 2013 WL 2319342 *5 (E.D. Mo. May 28, 2013). In *That's Great News*, the plaintiff, a business who allegedly received three unsolicited facsimile advertisements from the defendant, brought a cause of action under the TCPA and moved to certify a class for all persons whom the defendant sent the advertisement. 2012 WL 4888471 *1. Analyzing the predominance requirement under Rule 23(b)(3) in connection with the fact that the TCPA does not prohibit the sending of solicited facsimiles or unsolicited facsimiles to a recipient who has an EBR with the sender, the Court concluded that "[r]esolving these individual issues of [(1) whether each individual facsimile was solicited or unsolicited; and (2) whether each facsimile recipient had an established business relationship with Defendants] in a single forum would require an abundant amount of time and resources." *Id.* at *4. Finding the common issues did not predominate over these individual issues, the Court held that predominance under Rule 23(b) had not been established. *Id.*

33.     Here, Plaintiff's class allegations/definition present the same two individual questions: (1) whether there is any evidence of prior express permission or invitation for the sending of the facsimile to each and every recipient; and (2) whether American had an EBR with each recipient. *See* Compl. at ¶ 34. As the Court in *That's Great News* recognized, resolving these individual issues, **which are the key issues in establishing liability**, will require an abundant amount of the Court's time and resources, and would predominate over any common issues especially because Plaintiff knows nothing about the potential class members' past dealings or relationships with Defendant. *See That's Great News*, 2012 WL 4888471 at *4.

34.     Further, as have courts in multiple districts, the District Court for the Eastern District of Missouri has recently recognized an improper "fail-safe class." *See Lindsay Transmission, LLC*, 2013 WL 275568 *4. A fail-safe class is "one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *Id.* (citations

omitted). This type of class definition is "improper because a class member either wins or by virtue of losing, is defined out of the class and is therefore not bound by the judgment," necessarily requiring individualized merits-based determinations to ascertain class membership. *Id.* In a nearly identical fact situation as our case, the *Lindsay* Court held: **"The 'need to make a determination for each class member as to whether the facsimile transmission was unsolicited, both by the lack of express permission and the absence of prior business relationship . . . makes class treatment . . . inappropriate and unmanageable.'"** *Id.* (emphasis added).

35.     Plaintiff's class definition requires this Court to determine the central issue of liability as to each individual potential class member making it an improper fail-safe class, and forces the court to conduct mini merit-based inquires as to each potential class member to ascertain class membership. If a potential class member has an EBR with American, or if the potential class member gave prior permission to receive the facsimile, then that potential class member is excluded from the class. As such, Plaintiff's class allegations should be stricken or dismissed.

b.  Plaintiff fails to meet the predominance requirement because an individualized determination is required as to whether each potential class member has standing to bring a claim under the TCPA.

36.     "The 'well established' law of Article III [of the Constitution] standing requires a plaintiff to *'allege personal injury* fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Murray v. U.S. Dept. of Treasury*, 681 F.3d 744, 748 (6th Cir. 2012) (citations omitted and emphasis added). The 'irreducible constitutional minimum' of standing requires that a plaintiff show: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to speculative, that the injury will be redressed by a favorable decision.'" *Avio, Inc. v. Alfoccino, Inc.*, --F.Supp.2d--, No. 10-10221, 2014 WL 1870108 *5 (E.D. Mich. May 9, 2014) (citations omitted);

*see also Halvorson*, 718 F.3d at 779 (discussing standing in connection with the issue of predominance) (citations omitted).

37.     **The constitutional requirement of standing is equally applicable to class actions.** *Halvorson*, 718 F.3d at 779 (citations omitted); *Arizona Christian School Tuition Organization v. Winn*, 131 S. Ct. 1436, 1449 (2011) ("In an era of frequent litigation, class actions, sweeping injunctions with prospective effect, and continuing jurisdiction to enforce judicial remedies, courts must be more careful to insist on the formal rules of standing, not less so."). A class cannot be certified if it contains members who lack standing. *Id.* As explicitly held by the Eighth Circuit, **"[a] class must therefore be defined in such a way that anyone within it would have standing."** *Id.* at 779-80. (holding class certification improper where some members of the class lack standing). (citations omitted) (emphasis added).

38.     "While the TCPA provides that a person who sent a fax advertisement may be liable, nowhere in the statute does Congress express an intent to circumvent the requirement that a plaintiff have Article III case-or-controversy standing to bring a claim, which requires that the plaintiff demonstrate a 'distinct and palpable injury to himself.' *See Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Congress can enact a statute (such as the TCPA) that puts into place a "bounty"—a reward—for a plaintiff who assists in enforcing federal laws. *See Crabill v. Trans Union, LLC*, 259 F.3d 662, 665–66 (7th Cir.2001). However, there still must be an injury for the plaintiff to recover under the statute. *Avio, Inc.*, 2014 WL 1870108 at *6 (citing *Palm Beach Golf Ctr.–Boca, Inc. v. Sarris*, 981 F.Supp.2d 1239 (S.D. Fla. 2013).

39.     Here, an individualized inquiry is necessary to determine whether a potential class member has legal standing to sue, i.e. whether the potential class member has an injury and is an appropriate person to bring a claim under the TCPA. That inquiry is particular to each specific individual. Courts have varying opinions on what constitutes standing, or an injury, under the

TCPA; however, the commonality in the courts' opinions regarding standing is the recognition that the potential class members **must suffer an injury.**

40.      In *APB Associates, Inc. v. Bronco's Saloon, Inc.*, 297 F.R.D. 302 (E.D. Mich. 2013), the Court addressed the issue of standing as it pertains to unsolicited facsimile advertisements under the TCPA. The plaintiffs in *APB* defined the potential class members as those who were **sent** faxes. *Id.* at 316. Plaintiff likewise defines the class as those who were **sent** faxes. (Compl. at ¶ 34). The *APB* Court explained that the injuries the TCPA is intended to address are the cost of the paper and ink incurred by the owner of the fax machine and the fax machine owner's loss of the use of the machine. *Id.* The Court noted, that "[a]lthough there have been many TCPA cases in federal court, including many cases that have been certified as class actions, there is a surprising lack of case law as to who has statutory standing to pursue a TCPA based upon the receipt of an unsolicited fax advertisement." *Id.* at 317. The Court concluded that the person or entity that owned the fax machine that received the fax at issue is the person or entity with standing to assert a TCPA claim, reasoning that class definitions that include all "persons who were sent certain faxes" is ambiguous as it could include multiple plaintiffs stemming from one fax, including all individuals employed by a corporate entity, etc. *Id.* The Court goes on to say that even if the Court were to modify the class definition to include only those with statutory standing, there would still need to be an individualized determination as to who owned the fax machine when the particular fax was sent in order to ascertain the members of the class **defeating the individual predominance requirement**. *Id.* at 320.

41.      Further recognizing the necessity that a TCPA class definition include only those with standing, i.e. injured, the Court in *Avio, Inc.*, 2014 WL 1870108 at *6-7, held that in order for a plaintiff to be injured, the plaintiff must see the fax or otherwise become aware of its existence.

42.      In our Case, Plaintiff's class definition fails to limit the class to those who were injured, and thus fails to limit the class to those with standing to bring a claim under the TCPA. Plaintiff does not limit the class to owners or limit the class to those who saw or were aware of the fax but instead limits it to those "who were sent" the fax.  As discussed by both the *APB* Court and *Avio Inc.* Court, such a definition is improper. Further, even if this Court modified Plaintiff's class definition to include those who owned the fax machine or those who were aware of the facsimile, an individual inquiry would be necessary to determine which potential class members owned the fax machine or saw or became aware of the facsimile defeating the individual predominance requirement.

43.      Simply stated, Plaintiff's Complaint establishes that there are numerous individualized issues that doubtlessly will predominate over any purported common issues in the case. As discussed above, the issue of whether consent or an EBR existed with each recipient will require an individualized inquiry into the facts of each potential class member as will the issue of standing and injury. Moreover, three issues that Plaintiff alleged are common issues (see Compl. ¶ 33) are actually individual issues. Those issues—how American compiled or obtained fax numbers, how and whether American obtained consent before sending faxes, and whether American knowingly sent any unsolicited advertisements to recipients—will predominate over the common issues. *See Local Baking Prods., Inc. v. Kosher Bagel Munch, Inc.*, 421 N.J.Super 268, 23 A.3d 469, 476 (2011) (affirming trial court's pre-discovery order dismissing class allegations because predominance and superiority failed on TCPA claim). **"Lacking a single set of operative facts, it is difficult to see how common questions, if any, predominate."** *Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 404 (E.D. Pa. 1995) (emphasis added). Because the only allegations contained in Plaintiff's Complaint are not susceptible to class-wide proof, rather than

waste additional time and judicial resources, this Court should strike or dismiss Plaintiff's facially insufficient class allegations.

### iii.   The  Class,  as  Alleged,  Is  Not  Ascertainable  or  Properly  Defined.

44.      As a threshold matter, the parameters of the putative class must be ascertainable. *Ad Hoc Committee,* 143 F.R.D. at 219 ("threshold inquiry in any determination of class certification is identification of the parameters of the proposed class"). "To ascertain the class, the Court should not be required to resort to speculation, or engage in lengthy, individualized inquiries." *Brown v. Kerkhoff,* 279 F.R.D. 479, 496 (S.D. Iowa 2012) (citation omitted). **A court may dismiss the class allegation based on the pleadings, before a motion for certification is filed and even before discovery on the certification issue, where it is facially apparent from the pleadings that there is no ascertainable class**. *Lindsay Transmission, LLC*, 2013 WL 275568 *4.

45.      Here, the Complaint alleges a class of persons "(3) with respect to whom Defendant cannot provide evidence of prior express permission or invitation for the sending of such faxes, [and] (4) with whom Defendants does [sic] not have an established business relationship." (Compl. ¶ 34). In short, Plaintiff's class allegations, like *McCrary,* are heavily dependent on individualized inquiries, namely whether Plaintiff or other class members consented to the subject faxes or had an EBR with American. *See McCrary v. Stifel, Nicolaus & Co.*, 678 F.3d 1052 (8th Cir. 2012).

46.      Thus, in order to ascertain the persons that fall into Plaintiff's proposed class, this Court would be required to make judgments about two factors that cannot be identified by reference to objective criteria: consent and the existence of an EBR. *See* Compl. at ¶ 34. The Complaint does *not* allege any class-wide basis for identifying such persons, which means that the Court would have to assess the individual circumstances of each potential class member,

one-by-one, issue by issue. Identifying those qualities in putative class members requires the Court to make judgments about subjective mental states, whether each individual consented to receive material from American by any means, and whether each class member had, at the time each fax was sent, an EBR with American. As in *McCrary,* where the Eighth Circuit affirmed the dismissal of the class allegation because the plaintiffs' claims regarding "unauthorized trading" required individualized analysis, Plaintiff's class allegations will require the Court to determine whether the faxes to each recipient were in fact unauthorized, *see McCrary,* 687 F.3d at 1059, or are subject to an EBR. Again, these lengthy individualized inquiries would be required for each putative class member, and render the class not ascertainable. *McCrary,* 687 F.3d at 1059; *Kerkhoff,* 279 F.R.D. at 496. Plaintiff's class claims therefore fail the ascertainability test and should be stricken or dismissed.

WHEREFORE, for the foregoing reasons, Defendant American Homepatient, Inc., respectfully requests that the Court grant this Motion.

Respectfully Submitted,

STEVE KOSLOVSKY, LLC

By: /s/ Steve W. Koslovsky
STEVE W. KOSLOVSKY
MO State Bar No. 29183
7733 Forsyth Blvd., Suite 1100
Clayton, Missouri 63105
Telephone: (314) 296-6120
Email: swk@koslaw.net

C. GREGORY SHAMOUN
TX State Bar No. 18089650
KEVIN C. MORAN
TX State Bar No. 24058006
Shamoun & Norman, LLP
1755 Wittington Place, Suite 200, LB25
Dallas, Texas 75234
Telephone: (214) 987-1745
Facsimile: (214) 521-9033
Email: kmoran@snlegal.com
(*Pro Hac Vice* filed)

***Attorneys for American Homepatient, Inc.***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been upon the below listed counsel of record by U.S. Mail served on this 13th day of October, 2014:

Max Margulis
Margulis Law Group
28 Old Belle Monte Road
Chesterfield, MO 63017
Telephone: (636) 536-7022
Facsimile: (636) 536-6652
Email: MaxMargulis@MargulisLaw.com

By: /s/ Steve W. Koslovsky
STEVE W. KOSLOVSKY